UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                           :
In re                                 :       Chapter 11
                                           :
BCBG MAX AZRIA GLOBAL         :       Case No. 17-10466 (SCC)
HOLDINGS, LLC, et al.,[1]             :
                                          :       Jointly Administered
                                          :
                  Debtors.               :
---------------------------------------------------------------x
                                          :
DAVID MACGREEVEY, in his capacity as  :
PLAN ADMINISTRATOR,              :       Adv. Pro. No. 17-01101 (SCC)
                                          :
                 Plaintiff,            :
                                          :
           vs.                                   :
                                          :
NYAM, LLC,                          :
                                          :
                 Defendant.         :
---------------------------------------------------------------x

## MEMORANDUM OF LAW IN
## SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

                                                                             Robert J. Feinstein, Esq.
                                                                             Bradford J. Sandler, Esq.
                                                                             Beth E. Levine, Esq.
                                                                             PACHULSKI STANG ZIEHL & JONES LLP
                                                                             780 Third Avenue, 34th Floor
                                                                             New York, NY 10017
                                                                             Telephone: (212) 561-7700
                                                                             Facsimile: (212) 561-7777

                                                                             *Counsel to the Plaintiff*

---

[1] A list of the Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number include: BCBG Max Azria Global Holdings, LLC (6857); BCBG Max Azria Group, LLC (5942); BCBG Max Azria Intermediate Holdings, LLC (3673); Max Rave, LLC (9200); and MLA Multibrand Holdings, LLC (3854).

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND ............................................... 1

    A.    General Procedural and Factual Background ......................................................... 1

        1.    The Bankruptcy Cases ................................................................................ 1

        2.    The Letter Agreement ................................................................................ 2

        3.    The Factoring Agreement .......................................................................... 2

        4.    The License Agreement ............................................................................. 2

        5.    The Program............................................................................................... 4

    B.    NYAM's Proof of Claim .......................................................................................... 5

    C.    The Adversary Proceeding...................................................................................... 6

ARGUMENT................................................................................................................................. 6

    A.    Summary Judgment Standard ................................................................................. 6

    B.    It is Undisputed that NYAM Owes the Plaintiff the Royalties and Letter
           Agreement Credit..................................................................................................... 8

        1.    Plaintiff Is Owed The Royalties................................................................. 8

        2.    Plaintiff Is Owed The Letter Agreement Credit ....................................... 8

    C.    NYAM is Not Entitled to Setoff Because the Damages and the Claim are
           Not Mutual............................................................................................................... 9

CONCLUSION............................................................................................................................ 11

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................. 7
*Balderman v. U.S. Veterans Admin.*,
  870 F.2d 57 (2d Cir. 1989) ........................................................................................ 7
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................. 7
*Citizens Bank of Md. v. Strumpf*,
  516 U.S. 16 (1995) .................................................................................................... 9
*Del Monte Ranch Dairy v. Bernardo*,
  174 Cal. 757 (1917) ................................................................................................ 10
*EEOC v. Fred Meyer Stores, Inc.*,
  954 F.Supp. 2d 1104 (D. Or. 2013) ........................................................................... 7
*Goforth v. U.S. Dept. of Educ.*,
  466 B.R. 328 (Bankr. W.D. Pa. 2012) ....................................................................... 9
*In re Lehman Bros. Holdings, Inc.*,
  433 B.R. 101 (Bankr. S.D.N.Y. 2010) ................................................................. 9, 10
*In re Lehman Bros., Inc.*,
  458 B.R. 134 (Bankr. S.D.N.Y. 2011) ................................................................. 9, 10
*JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*,
  264 F. 3d 459 (4th Cir. 2001) .................................................................................... 8
*Lines v. Bank of Am. Nat'l Tr. & Sav. Ass'n*,
  743 F.Supp 176 (S.D.N.Y. 1990) ............................................................................ 10
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................................................. 7
*Official Comm. of Unsecured Creditors v. Mfrs. & Traders Trust Co.* (*In re Bennett Funding Grp.*),
  146 F.3d 136 (2d Cir. 1998) ...................................................................................... 9
*Scotto v. Almenas*,
  143 F.3d 105 (2d Cir. 1998) ...................................................................................... 7
*Third Avenue Tr. v. SunTrust Bank*,
  166 F.Supp. 2d 783 (S.D.N.Y. 2001) ........................................................................ 7

## OTHER AUTHORITIES

5 Collier on Bankruptcy ¶ 553.03[3][b] .......................................................................... 10

## RULES

11 U.S.C. § 553(a) ............................................................................................................ 9
Fed. R. Bankr. P. 7056 ..................................................................................................... 6
Fed. R. Civ. P. 56(a) ......................................................................................................... 7
Fed. R. Civ. P. 56(c) ......................................................................................................... 7

Plaintiff (the "Plaintiff") David MacGreevey, solely in his capacity as plan administrator in the above-captioned chapter 11 cases, submits this memorandum of law in support of his *Motion for Partial Summary Judgment* (the "Motion") filed contemporaneously herewith.

## PRELIMINARY STATEMENT

This action was commenced, in part, to recover at least $675,000.00 owed by defendant NYAM LLC ("NYAM") to BCBG Max Azria Group, LLC ("BCBG") pursuant to a letter agreement dated February 9, 2015 (the "Letter Agreement") and a manufacturing licensing agreement dated February 1, 2016 (the "Licensing Agreement" and collectively with the Letter Agreement, the "Agreements") between the parties.  It is undisputed that NYAM owes these amounts to BCBG.  However, while acknowledging its obligation under the Agreement, NYAM proffers an alleged right to setoff as its main defense (the "Second Affirmative Defense") to its obligation.  But, this defense fails because NYAM assigned to its factor, Hana Financial, Inc. ("Hana"), the invoices that it claims provide the basis for its alleged setoff.  This assignment to Hana eliminated the mutuality between those amounts and the amounts that NYAM owes to BCBG pursuant to the Agreements, thus destroying NYAM's right to setoff.  Accordingly, this Court should grant summary judgment (i) finding NYAM is liable to the Plaintiff in the amount of $675,000.00, and (ii) dismissing NYAM's Second Affirmative Defense in its entirety.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

**A.    General Procedural and Factual Background**

1. *The Bankruptcy Cases*

On February 28, 2017, each of the Debtors, including BCBG, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  *See* Docket No. 1.  On July 26, 2017, the Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming the Amended Joint Plan of Reorganization of BCBG Max Azria Global Holdings, LLC and Its Debtor*

*Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 591] (the "Confirmation Order"), confirming the chapter 11 plan, as amended (the "Plan"). On July 31, 2017, the Effective Date (as such term is defined in the Plan) occurred. *See* Docket No. 601. Pursuant to the Plan, the Plaintiff was appointed on the Effective Date, and is "the sole representative of, and shall act for, the Post-Effective Date Debtors." *See* Plan at Article IV.E.

2. *The Letter Agreement*

On February 9, 2015, NYAM and BCBG entered into the Letter Agreement.[2] Pursuant to the Letter Agreement, in exchange for certain rights granted to NYAM by BCBG, upon execution of the Letter Agreement, NYAM was to pay BCBG $500,000.00, consisting of a $400,000.00 check and $100,000 in the form of offsetting invoices due from BCBG to NYAM (the "Letter Agreement Credit"). Levine Decl. Exhibit A, at p. 1.

3. *The Factoring Agreement*

On September 22, 2015, NYAM entered into that certain *Factoring, Loan and Security Agreement* (the "Factoring Agreement") with Hana.[3] Levine Decl. Exhibit B. Pursuant to the Factoring Agreement, NYAM sold, assigned, and transferred, and Hana purchased, all of NYAM's then-existing and future Accounts (as such term is defined in the Factoring Agreement). Levine Decl. Exh. B. at §§ 1.1, 13.

4. *The License Agreement*

On or about February 1, 2016, NYAM and BCBG entered into the License Agreement[4] for an initial term of February 1, 2016 to April 1, 2017 (the "License Period"). Levine Decl. Exhibit C; *see also Declaration of Brian Fleming in Support of Response to Debtors' Objection to Proof of Claim Number 751 Filed by NYAM LLC* dated July 18, 2017 [Docket No. 546-1] (the

---

[2] A copy of the Letter Agreement is attached to the accompanying *Declaration of Beth E. Levine in Support of Motion for Partial Summary Judgment*, dated November 20, 2018 (the "Levine Decl.") as Exhibit A.
[3] A copy of the Factoring Agreement is attached to the Levine Decl. as Exhibit B.
[4] A copy of the License Agreement is attached to the Levine Decl. as Exhibit C.

DOCS_NY:38043.9 08467/001                              2

"Fleming Decl."), at ¶ 6.[5]  Under the License Agreement, BCBG granted NYAM the right to use certain of BCBG's intellectual property during the License Period.  *Id.*; *see also* Levine Decl. Exhibit C, at § 3.  In exchange for these rights, NYAM was required to pay royalties to BCBG.  Levine Decl. Exhibit D, at ¶ 7; *see also* Levine Decl. Exhibit C, at § 13.4.

By its own admission, NYAM has failed to remit $575,000.00 (the "Royalties") due and owing under the License Agreement to the Debtors.  In his October 25, 2018 deposition,[6] Brian Fleming, NYAM's CFO and its corporate designee pursuant to Rule 30(b)(6) of the Federal Rules of Civil procedure, specifically admitted that NYAM has failed to remit the Royalties:

> Q:  Would it be accurate to say that [under the License Agreement] NYAM was required to pay BCBG $125,000 a month from May 2016 through December 2016 and thereafter $100,00 per month in January and again in February?
>
> A:  Correct. . . .
>
> Q:  Did NYAM pay BCBG the amounts set forth in these invoices that date from August through January – well, 2016 to 2017?
>
> A:  NYAM did not pay these five invoices. . . .
>
> Q:  Okay.  NYAM never disputed that these amounts were owed to BCBG?
>
> A:  Correct.
>
> Q:  And do those invoices total $575,000.00?
>
> A:  Yes.

Levine Decl. Exhibit E at 28:6-11; 29:7-10; 29:17-19.  *See also Defendant NYAM LLC's Answer to Adversary Complaint for Damages and Indemnification* [Adv. D.I. 3] (the "Answer") at ¶¶ 9, 10, 12.  NYAM's only proffered defense to its non-payment of such amounts is its asserted setoff rights.  *Id.* at ¶¶ 9, 10, 12, Second Affirmative Defense.

---

[5] A copy of the Fleming Decl. is attached to the Levine Decl. as Exhibit D.
[6] A copy of the transcript of the October 25, 2018 deposition of Brian Fleming (the "October 25 Transcript") is attached to the Levine Decl. as Exhibit E.

5.  *The Program*

For several years prior to 2016, the Debtors worked with Mega-Link, a sourcing agency, to outsource the manufacture of much of their merchandise.  Levine Decl. Exhibit D ¶ 8.  In early 2016, as a result of liquidity problems, the Debtors ceased paying Mega-Link in advance, and as a result, Mega-Link was unable to pay the factories with which it dealt for a significant quantity of goods in production for the Debtors.  The factories declined to ship the goods until payment could be made.  *Id.* at ¶ 9.

In May or June of 2016, Mega-Link, NYAM, and Hana entered into a program (the "Program") necessitated by the Debtors' then-existing liquidity problems in order to finance the production and sale of goods ordered by the Debtors.  *Id.* at ¶ 10.  Under the Program, Mega-Link assigned its rights in the Mega-Link Invoices to NYAM.  *Id.* at ¶ 16.  These assignments were effectuated through periodic assignment agreements (the "Mega-Link Assignments").  *Id.* at ¶ 16; Levine Decl. Exhibit E at 74:9-20.

Pursuant to the Program, NYAM then factored the Mega-Link Invoices that were subject to the Program (the "Assigned Mega-Link Invoices") with Hana.  Levine Decl., Exhibit D, at ¶ 11; Levine Decl. Exhibit E at 87:19-88:2.  To that end, as NYAM has admitted, NYAM assigned all of the Assigned Mega-Link Invoices to Hana.  *Response to Debtors' Objection to Proof of Claim Number 751 Filed by NYAM LLC* [Docket No. 546] (the "Response") at ¶ 17[7]; Levine Decl. Exhibit E at 89:3-14.

Each of the Assigned Mega-Link Invoices contains identical language, stating that the invoice is **"assigned to, owned by, and payable only to: HANA FINANCIAL, INC.,"** listing the wire instructions for BCBG to remit payment directly to Hana.  *See,* Proof of Claim no. 1070 ("Claim No. 1070") filed by NYAM, Levine Decl. Exhibit G, at Exhibit B (emphasis added).

---

[7] The Response is attached to the Levine Decl. as Exhibit F.

NYAM and Hana also executed assignment agreements relating to the Assigned Mega-Link Invoices (the "NYAM Assignments"), further evidencing the assignment of the Assigned Mega-Link Invoices to Hana.  *See* NYAM Assignments.[8]

**B.    NYAM's Proof of Claim**

On June 7, 2017, NYAM filed a proof of claim [Claim No. 751] (the "Administrative Claim"), asserting a $1,757,203.00 administrative claim against BCBG.  *See* Administrative Claim.  On June 24, 2017, the Debtors filed the *Debtors' Objection to Proof of Claim Number 751 Filed by NYAM LLC* [D.I. 467] (the "Claim Objection").  The Claim Objection sought to disallow and expunge the Administrative Claim.  In the Claim Objection, the Debtors argued, *inter alia*, that NYAM was not entitled to setoff the Administrative Claim against amounts owed by NYAM to the Debtors (including those amounts that are the subject of this Adversary Proceeding).  On July 18, 2017, NYAM filed the Response.  On July 21, 2017, the Debtors filed the *Debtors' Sur-Reply in Support of Debtors' Objection to Proof of Claim Number 751 Filed by NYAM LLC* [D.I. 559] (the "Sur-Reply").  On August 9, 2017, the Court entered its *Order Granting Debtors' Objection to Proof of Claim Number 751 Filed by NYAM LLC* [D.I. 618] (the "Order"), reclassifying the Administrative Claim as a general unsecured claim and directing NYAM to amend its claim and to attach to the amended claim the proper invoices comprising its claim.  The Order did not address whether NYAM was entitled to setoff, and specifically preserved all parties' rights to address that issue on a later date.  *Order*, at ¶ 7.

On August 11, 2017, in accordance with the Order, NYAM filed Claim No. 1070.  Claim No. 1070 asserts a general unsecured claim against BCBG in the amount of $1,754,149.50.  Claim No. 1070 is comprised of approximately 165 invoices, which allegedly correspond to merchandise shipped to the Debtors pursuant to the Program.  Levine Decl. Exhibit G, at Exhibit

---

[8] Copies of certain of the NYAM Assignments are attached to the Levine Decl. as Exhibit H.

A.  Each of the invoices attached to and forming the basis of Claim No. 1070 are Assigned Mega-Link Invoices.  *Id.* at Exhibit B.

**C.    The Adversary Proceeding**

On July 28, 2017, the Debtors commenced the above-captioned Adversary Proceeding with the filing of the *Adversary Complaint for Damages and Indemnification* [Adv. D. I. 1] (the "Complaint") against NYAM.  In the Complaint, the Debtors asserted that NYAM: (1) failed to pay Royalties required under the License Agreement, totaling at least $575,000, (2) failed to effectuate the Letter Agreement Credit in the amount of $100,000, and (3) breached the License Agreement by improperly selling licensed goods past the License Period, causing damages to the Debtors (the "Improperly Sold Amount," and together with the Royalties and the Letter Agreement Offset, the "Damages").

On August 31, 2017, NYAM filed the Answer.  In the Answer, NYAM admitted that it owed the Royalties to the Debtors, but claimed that the Royalties were subject to offset.  *See* Answer at ¶¶ 9, 10, 12.  NYAM also asserted the Second Affirmative Defense in which it alleged that it was entitled to offset any amounts owed to the Debtors by "the full amount of all outstanding obligations, including, but not limited to, payment of Defendant's unsecured claim." Answer, Second Affirmative Defense.

**ARGUMENT**

This Court should enter summary judgment in favor of Plaintiff on the Royalties and the Letter Agreement Credit and against Defendant on Defendant's Second Affirmative Defense.

**A.    Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. U.S. Veterans Admin.*, 870 F.2d 57, 60 (2d Cir. 1989).  The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the motion for summary judgment is properly made, the burden shifts to the nonmoving party, to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.  The nonmovant "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), but must support the existence of an alleged dispute with specific citation to the record materials. Fed. R. Civ. P. 56(c).

Further, Rule 56(a) expressly provides that a party may move for summary judgment on a defense.  Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim ***or defense*** . . .") (emphasis added); *see also EEOC v. Fred Meyer Stores, Inc.*, 954 F.Supp. 2d 1104, 1112-13 (D. Or. 2013) (holding that a party may move for partial summary judgment on an affirmative defense).  Finally, Rule 56(a) expressly permits the Court to enter a partial summary judgment or summary adjudication with respect to part of a claim or defense. *See Third Avenue Tr. v. SunTrust Bank*, 166 F.Supp. 2d 783, 788 (S.D.N.Y. 2001) (court adjudicated liability, but range of damages was subject to later determination).

**B.    It is Undisputed that NYAM Owes the Plaintiff the Royalties and Letter Agreement Credit**

   **1.    Plaintiff Is Owed The Royalties**

This Court should grant summary judgment in favor of Plaintiff with respect to the Royalties, plus interest because where, as here, there is no material genuine factual dispute, Rule 56 is an appropriate vehicle to avoid trial of factual matters. *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F. 3d 459, 465 (4th Cir. 2001) ("as a practical matter, we recognize that summary judgment may be particularly appropriate given the circumstances, because it is favored as a mechanism to secure the just, speedy and inexpensive determination of a case, where its proper use can avoid the cost of a trial"). As noted above, NYAM has admitted on numerous occasions that it owes the Royalties to the Plaintiff. *See, e.g.*, Answer, at ¶¶ 9, 10, 12; Levine Decl. Exhibit E, at 28:7-29:9, 35:17-36:15. Further, NYAM admits that it owes interest on the Royalties at the prime interest rate plus five percent. *Id.* at 37:2-5. There is accordingly no factual dispute as to the Royalties to be determined at trial, and summary judgment in Plaintiff's favor on the Royalties and interest thereon is clearly appropriate.

   **2.    Plaintiff Is Owed The Letter Agreement Credit**

Similarly, there are no material factual disputes regarding NYAM's failure to implement the Letter Agreement Credit. In its deposition, NYAM has admitted that there is nothing on NYAM's books reflecting the effectuation of Letter Agreement Credit:

> Q: All right. Is there anything to show whether there is $100,000.00 credit on the books and records of NYAM relating to the invoices that are the subject of the letter?
>
> A: No. There is nothing on the books of NYAM at this time.

In addition at the October 25, 2018 deposition of Mr. Fleming, counsel for Plaintiff specifically requested that any such evidence be produced. Levine Decl. Exhibit E at 22:15-24. Although NYAM made a supplemental document production after the deposition, it produced no evidence

that the Letter Agreement Credit was effectuated. Thus, there is no genuine dispute that NYAM owes BCBG the Letter Agreement Credit, and summary judgment on the Letter Agreement Credit should therefore be granted.[9]

**C.    NYAM is Not Entitled to Setoff Because the Damages and the Claim are Not Mutual**

The invoices that form the basis for Claim No. 1070 provide on their face that they were assigned to Hana. Levine Decl. Exhibit G. Therefore, the debts at issue are not mutual and, accordingly, and as set forth in greater detail below, Defendant is not entitled to setoff.

Section 553(a) of the Bankruptcy Code provides that nothing in the Bankruptcy Code "affect[s] any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a). Thus, section 553 of the Bankruptcy Code does not itself create any rights of setoff. *See, e.g., Official Comm. of Unsecured Creditors v. Mfrs. & Traders Trust Co.* (*In re Bennett Funding Grp.*), 146 F.3d 136, 138-39 (2d Cir. 1998); *In re Lehman Bros., Inc.*, 458 B.R. 134, 139 (Bankr. S.D.N.Y. 2011) ("*UBS*"); *see also Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) (explaining that "[a]lthough no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy"). Rather, it preserves rights of setoff that exist under nonbankruptcy law where three conditions exist: "(1) the amount owed by the debtor must be a prepetition debt; (2) the debtor's claim against the creditor must also be prepetition; and (3) the debtor's claim against the creditor and the debt owed the creditor ***must be mutual***." *In re Lehman Bros. Holdings, Inc.*, 433 B.R. 101, 107 (Bankr. S.D.N.Y. 2010) ("*Swedbank*") (citations omitted) (emphasis added).

---

[9] *See Goforth v. U.S. Dept. of Educ.*, 466 B.R. 328, 334 (Bankr. W.D. Pa. 2012) ("Once the moving party satisfies its burden of establishing a prima facie case for summary judgment, the non-moving party must respond with contrary evidence and do more than raise some metaphysical doubt as to material facts, otherwise judgment will be entered in favor of the movant").

It is an "axiomatic principle" of bankruptcy law that mutuality is required to exercise a right of setoff. *Swedbank*, 433 B.R. at 109. While the Bankruptcy Code does not define mutuality, "courts consistently find debts to be mutual only when they are 'in the same right and ***between the same parties***, standing in the same capacity.'" *UBS*, 458 B.R. at 140 (quoting *Lines v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 743 F.Supp 176, 183 (S.D.N.Y. 1990)) (emphasis added). Accordingly, party A and party B may only offset claims each party holds against the other; party A cannot offset an amount it owes to party B against an amount party B owes to party C. *See generally* 5 Collier on Bankruptcy ¶ 553.03[3][b]; *see also UBS*, 458 B.R. at 141-42 (Bankr. S.D.N.Y. 2011) (finding that "triangular setoff" does not satisfy the mutuality requirement).

Once assigned to a third party, a claim against a party cannot be used by the assignor to effectuate a setoff of a debt it owes to that party. *See, e.g.,* 16 Cal. Jur. Counterclaim and Setoff § 19 ("if a debtor-defendant has parted with his or her claim against the plaintiff by absolute assignment, it is not available as a setoff though the purpose of the assignment was to effect its collection") (citing *Del Monte Ranch Dairy v. Bernardo*, 174 Cal. 757 (1917)).[10]

Here, it is undisputed that each of the Mega-Link Invoices underlying Claim No. 1070 was assigned by NYAM to Hana. First, each of the Mega-Link Invoices clearly states on its face that it is "assigned to, owned by, and payable only to: HANA FINANCIAL, INC.," listing the wire instructions for BCBG to remit payment directly to Hana. Second, the Factoring Agreement plainly provides that Hana purchased (and NYAM assigned to Hana) all of NYAM's then-existing and future Accounts, which includes the Mega-Link Invoices. Levine Decl. Exhibit B, at §§ 1.1, 13. Finally, NYAM further documented the assignment of the Mega-Link Invoices to Hana in the NYAM Assignments. Levine Decl. Exhibit H. Accordingly, the

---

[10] The Factoring Agreement and the License Agreement are both governed by California law. *See* Levine Decl., Exhibit B, at §22; Levine Decl., Exhibit C, at § 12. Accordingly, California law applies to the dispute between the parties.

Assigned Mega-Link Invoices, including the ones which form the basis for Claim No. 1070, are owned by Hana, not NYAM, destroying mutuality. NYAM therefore has no claim against the Debtors that can be offset against the Damages.

## **CONCLUSION**

For the foregoing reasons, the Plaintiff respectfully submits that the Court should grant the Motion, (i) finding NYAM is liable to the Plaintiff in the amounts of the Letter Agreement Credit and the Royalties, plus interest; and (ii) dismissing the Second Affirmative Defense; and (iii) granting such other and further relief as is just and proper.

Dated:  November 20, 2018                                    PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Beth E. Levine*
Robert J. Feinstein, Esq.
Bradford J. Sandler, Esq.
Beth E. Levine, Esq.
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:   (212) 561-7777
Email: rfeinstein@pszjlaw.com
           bsandler@pszjlaw.com
           blevine@pszjlaw.com

*Counsel to the Plaintiff*