UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re                                                       :    Chapter 11
                                                            :
BCBG MAX AZRIA GLOBAL                                       :    Case No. 17-10466 (SCC)
HOLDINGS, LLC, et al.,                                      :
                                                            :    Jointly Administered
                                                            :
            Debtors.                                        :
------------------------------------------------------------x
                                                            :
DAVID MACGREEVEY, in his capacity as                        :
PLAN ADMINISTRATOR,                                         :    Adv. Pro. No. 17-01101 (SCC)
                                                            :
            Plaintiff,                                      :
                                                            :
    vs.                                                     :
                                                            :
NYAM, LLC,                                                  :
                                                            :
            Defendant.                                      :
------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
<u>IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

            Michael D. Hamersky, Esq.
            Scott A. Griffin, Esq.
            Richard K. Milin, Esq.
            GRIFFIN HAMERSKY LLP
            420 Lexington Avenue, Suite 400
            New York, NY 10170
            Telephone: (646) 998-5580
            Facsimile: (212) 561-7777

            *Counsel to the Defendant, NYAM, LLC*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

COUNTER-STATEMENT OF FACTS ......................................................................................2

    1.       Defendant's Relationship with Hana ...................................................................2

    2.       The Factoring Agreement ....................................................................................2

    3.       The Parties' Method of Doing Business .............................................................3

    4.       "Assignment" of the Invoices at Issue ................................................................4

    5.       Mr. Fleming's Testimony Concerning the Parties' Method of Doing Business .......5

    6.       The Parties' Offsetting Debts ..............................................................................7

ARGUMENT ..................................................................................................................................8

DEFENDANT SHOULD BE GRANTED A SUMMARY JUDGMENT DISMISSING THIS
PROCEEDING BECAUSE DEFENDANT IS ENTITLED TO SET OFF AMOUNTS THAT
THE DEBTOR OWES IT AGAINST THE WHOLE OF THE CLAIM PLAINTIFF ASSERTS
HERE ..............................................................................................................................................8

    A.      Defendant Is Entitled to a Setoff under California law ..................................8

    B.      Defendant Is Entitled to a Setoff under the Bankruptcy Code ......................9

CONCLUSION .............................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Harrison v. Adams*, 20 Cal.2d 646, 648 (1942) .................................................................. 8, 9

*In re Sabine Oil & Gas Corp.,* 550 BR 59, 65 (Bankr SDNY 2016*), affd,* 567 BR 869 (SDNY 2017*), affd,* 734 Fed Appx 64 (2d Cir 2018) .................................................................. 8

*SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) ........................ 8

**Statutes**

Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* Section 553 ................................................... 9

Fed. R. Civ. P. 56(c) ............................................................................................................ 8

Defendant NYAM, LLC ("Defendant") respectfully submits this memorandum of law in opposition to the Motion for Partial Summary Judgment (the "Motion") brought by Plaintiff as plan administrator of the above-captioned debtors ("BCBG") and in support of Defendant's Cross-Motion for Summary Judgment (the "Cross-Motion").

## PRELIMINARY STATEMENT

This proceeding is easily resolved: Defendant is entitled to set off amounts that BCBG owes it against the entirety of Plaintiff's claim. The debts that Defendant and BCBG owe to each other are not subject to genuine debate. As Plaintiff states in its motion papers, it is "undisputed" that Defendant owes BCBG $675,000 under pre-petition licensing and related agreements, and Defendant's fully documented proof of claim shows that BCBG owes Defendant more than $1.7 million for merchandise that BCBG purchased before its bankruptcy but did not pay for.

Moreover, Defendant is indisputably entitled to its setoff defense. Plaintiff's two-page argument to the contrary – based on Plaintiff's incomplete and misleading account of the facts – is incorrect. Plaintiff argues that Defendant cannot assert a right of setoff because it assigned the invoices that support its proof of claim to its factor Hana pursuant to a factoring agreement. In support of this argument, Plaintiff points to incidental facts that, on their face, seem to support it, such as preprinted language on Defendant's invoices stating that they had been assigned irrespective of whether they had actually been assigned or not.

Yet Plaintiff knows, as the testimony and exhibits attached to Plaintiff's own moving papers show, that Defendant's factor refused to accept assignment of the invoices supporting Defendant's proof of claim, as both the factoring agreement and past practice permitted it to do so. Defendant and its factor have each submitted proofs of claim for their respective BCBG invoices, and they have each submitted Declarations stating (again) that Hana rejected assignment of the invoices on

1

which Defendant's claim is based. Plaintiff is in no position to disagree. Plaintiff owes ***Defendant***, not its factor, for the invoices at issue here.

For the foregoing reasons, this matter presents no genuine issue of material fact. Defendant is entitled to set off BCBG's $1.7 million pre-petition debt against the entire amount of its $675,000 pre-petition claim. This Court should therefore grant Defendant's Cross-Motion, deny Plaintiff's Motion in its entirety, and grant a summary judgment dismissing this adversary proceeding.

## COUNTER-STATEMENT OF FACTS

1. Defendant's Relationship with Hana

Defendant and its factor Hana entered into a Factoring, Loan and Security Agreement relating to Defendant's business with BCBG as of September 22, 2015 (the "Factoring Agreement"). *See* Declaration of Beth E. Levine in Support of Motion for Partial Summary Judgment dated November 20, 2018 ("Levine Decl."), Exhibit B.)

As is typical between contracting parties, Defendant and Hana were free to amend, alter or disregard the Factoring Agreement or any other agreement between them as they mutually agreed. BCBG had no contractual or other right to dictate how Defendant and Hana did business.

2. The Factoring Agreement

The Factoring Agreement provided that Defendant "agrees to sell, assign and transfer to Hana … all of [Defendant's] Accounts, with full power to Hana to collect and otherwise deal with such Accounts as the sole and exclusive owner thereof." (Factoring Agreement § 1.1.) The Agreement also stated that Hana had agreed to purchase "all of Client's Accounts [and] provide Advances against such Accounts."

In fact, however, the Factoring Agreement did not require Hana to purchase all of Defendant's Accounts, and it did not do so. The Factoring Agreement gave Hana a great deal of discretion and, in practice, its agreement to purchase "all" of "Client's Accounts" was

2

presumptive at best. Among other things:

- Invoices were not automatically assigned to Hana. Defendant was required to assign individual invoices within thirty (30) days of shipping and could only do so if the Account was not past due. (*See* Factoring Agreement § 1.2.)

- The Factoring Agreement gave Hana the right to reject invoices, and thereby limit its risk that BCBG would default, by determining "in its sole discretion" that the invoices were not "Eligible Accounts." (*See id.* § 2.1(b).)

- The Factoring Agreement gave Hana the right to reject invoices by "establish[ing] credit lines" and approving or rejecting invoices for specific orders on a "single order credit approval basis." (*See id.* § 1.2(a).) To effectuate this right, Hana merely had to notify Defendant "verbally and/or through Hana's E-Factoring System." (*See id.* § 1.2(b).)

- Hana had an effectively unrestricted right to reject invoices. Hana had "no liability to [Defendant] or any customer" for its "refusal to credit approve an Account." (*See id.* § 1.2(c).) The Factoring Agreement defined "Accounts" to include individual invoices and any other "forms of obligations." (*See id.* § 13.)

- The Factoring Agreement distinguished between "Approved Accounts" for which Hana extended credit and assumed the "Credit Risk" that "a customer will be financially unable to pay," and "Non-Approved Accounts." (*See id.* §§ 1.3, 13.) "Non-Approved Accounts" were "full recourse" – Hana did not own them and had no obligation to collect them. (*See id.* §§ 1.3, 13; Declaration of Kevin Thomas (the "Thomas Decl."), annexed to the Declaration of Michael D. Hamersky dated December 28, 2018 (the "Hamersky Decl.") as Exhibit A.), ¶ 6.)

3. The Parties' Method of Doing Business

Hana and NYAM understood the Factoring Agreement, and interpreted its application to the invoices at issue, as follows:

> 3. Under Hana's and NYAM's factoring agreement, Hana had discretion whether to accept or reject each NYAM invoice for factoring. Hana also had discretion to change some of the key terms on which it agreed to extend credit to NYAM.

3

> 4. During the course of the Program [under which Hana factored BCBG invoices for NYAM], Hana exercised its contractual discretion to reject NYAM invoices for factoring on numerous occasions.
>
> 5. Hana's procedure during the course of the Program was to review each NYAM invoice and notify NYAM, typically within five days, whether it would accept or reject the invoice for factoring. Hana provided notice of its decision as to which invoices it accepted for factoring, and which it rejected, through a computerized system to which NYAM had access.
>
> 6. When Hana rejected an invoice for factoring, that invoice was not assigned to Hana and Hana did not accept any ownership interest in the invoice. Also, Hana did not factor those invoices and they were designated as "recourse," meaning that Hana assumed no obligation to attempt to collect them. …
>
> 8. … The invoices identified in the NYAM proof of claim are all invoices that Hana rejected for factoring. Accordingly, Hana never took an ownership interest in those invoices, and BCBG (or its successor) owes them exclusively to NYAM, not to Hana.

(*See* Declaration of Kevin Thomas (the "Thomas Decl."), annexed to the Declaration of Michael D. Hamersky dated December 28, 2018 (the "Hamersky Decl.") as Exhibit A; Declaration of Brian Fleming (the "Thomas Decl."), annexed to the Declaration of Michael D. Hamersky dated December 28, 2018 (the "Fleming Decl.") as Exhibit B.)

4. "Assignment" of the Invoices at Issue

Plaintiff asserts in its Memorandum of Law ("Pl. Mem.") that each of the invoices at issue here "clearly states on its face that it is 'assigned to, owned by, and payable only to: HANA FINANCIAL, INC.'" (Pl. Mem. at 10.) Messrs. Thomas and Fleming have explained, however, that:

> All of the NYAM invoices issued in connection with the Program contained an instruction that payment should be remitted to Hana rather than to NYAM. This was done as a matter of convenience even when Hana had decided to reject the invoice for factoring. If an invoice that Hana rejected for factoring was paid to Hana, Hana's practice was to credit the payment to NYAM's open credit balance.

(Thomas Decl. ¶ 7; Fleming Decl. ¶ 7.)

4

Plaintiff also asserts in its Memorandum of Law that "the Factoring Agreement plainly provides that Hana purchased (and NYAM assigned to Hana) all of NYAM's then-existing and future Accounts, which includes the Mega-Link Invoices [underlying Defendant's proof of claim]." (Pl. Mem. at 10.)

The Declarations of Thomas and Fleming establish, however, that Plaintiff has misrepresented the effect of this provision of the Factoring Agreement by quoting it out of context. The Factoring Agreement contains exceptions as discussed above, and Hana's and Defendant's past practice undeniably demonstrates that Hana rejected assignment of many of Defendant's invoices. (*See* Thomas Decl. ¶¶ 3-8; Fleming Decl. ¶¶ 3-8.)

In addition, Plaintiff asserts that, "NYAM further documented the assignment of the Mega-Link Invoices to Hana in the NYAM Assignments." (Pl. Mem. at 10.) Mr. Fleming has explained the function of the "Assignment" forms, which Plaintiff misrepresents as "document[ing] the assignment," as follows:

> When NYAM wanted to assign an invoice to Hana for factoring, it filled out a form entitled "Assignment" which provided that NYAM "hereby sells, assigns, transfers and sets over to HANA FINANCIAL...the accounts receivable described in the attached copies of invoices...." However, this "Assignment" was actually only a *request for* and *offer of* assignment. An actual assignment was only effectuated if Hana accepted the assignment and thereby agreed to lend NYAM money based on the invoice. …. Hana typically notified NYAM whether it had accepted the assignment within five days of receiving the "Assignment" form.
>
> NYAM did not receive any loans, payments or anything else of value in exchange for filling out an "Assignment" form. In fact, Hana typically charged NYAM a small fee even if it rejected the assignment.

(Fleming Decl. ¶ 10.)

5. <u>Mr. Fleming's Testimony Concerning the Parties' Method of Doing Business</u>

At his deposition, Defendant's Brian Fleming testified that all of Defendant's invoices from the BCBG factoring program (the "Program") were initially "assigned" to Hana and then

5

"pushed back" and "reassigned" to Defendant if Hana rejected them for factoring. Mr. Fleming is not a lawyer, and he has now clarified what he meant in his Declaration.

In fact, Defendant's practice was only to "request" or "offer" assignment to Hana by filling in Hana's Assignment forms. "An actual assignment was only effectuated if Hana accepted the assignment and thereby agreed to lend NYAM money based on the invoice." (Fleming Decl. ¶ 10.) Mr. Fleming explained that, "[a]s a business matter, it would make no sense to transfer ownership of the right to collect a valuable invoice without receiving cash, a loan, or something else of equivalent value in exchange." (Fleming Decl. ¶ 15.) Mr. Fleming's Declaration states:

> 9. I was deposed in this proceeding on October 25, 2018. In reviewing my testimony, I have realized that my terminology was not always precise. In particular, I testified that all of NYAM's invoices in connection with its BCBG Program were initially "assigned" to Hana, but that some of the invoices were then "reassigned" to NYAM based on credit considerations. My testimony was accurate as a practical business matter. However, I have learned that lawyers' interpretation of the word "assignment" is somewhat different from the way I intended to use it at my deposition. I would therefore like to clarify my testimony here.
>
> 10. When NYAM wanted to assign an invoice to Hana for factoring, it filled out a form entitled "Assignment" which provided that NYAM "hereby sells, assigns, transfers and sets over to HANA FINANCIAL…the accounts receivable described in the attached copies of invoices…." However, this "Assignment" was actually only a *request for* and *offer of* assignment. An actual assignment was only effectuated if Hana accepted the assignment and thereby agreed to lend NYAM money based on the invoice. As I stated above, Hana typically notified NYAM whether it had accepted the assignment within five days of receiving the "Assignment" form.
>
> 11. NYAM did not receive any loans, payments or anything else of value in exchange for filling out an "Assignment" form. In fact, Hana typically charged NYAM a small fee even if it rejected the assignment.
>
> 12. NYAM only received value from Hana for a requested assignment, and only actually assigned ownership of and the right to collect the invoices attached to the "Assignment" form, once Hana accepted the assignment. When Hana notified NYAM that it had rejected an invoice, the invoice, and the right to own and collect it, remained with NYAM. Both NYAM and Hana typically referred to these invoices as "recourse."

6

13. I testified that NYAM's invoices were assigned to Hana and, if rejected, reassigned to NYAM, because, in practice, NYAM filled out "Assignment" forms and sent them to Hana. Also, the Factoring Agreement states that all invoices will be assigned to Hana, although it also specifies situations in which Hana can refuse the assignment.

14. On reflection, I would like to make sure that my testimony is clear: The "Assignment" forms requested an assignment, but did not actually effectuate an assignment, because NYAM did not receive anything in return unless Hana actually accepted NYAM's assignment.

15. In other words, ownership of invoices did not transfer back and forth between NYAM and Hana when Hana rejected an invoice for factoring. My understanding is that ownership of an invoice only transferred to Hana once it approved the invoice for factoring and agreed to lend NYAM money based on the invoice. As a business matter, it would make no sense to transfer ownership of the right to collect a valuable invoice without receiving cash, a loan, or something else of equivalent value in exchange.

16. Even though Hana sometimes loaned NYAM money based on "recourse" invoices, it did not take over ownership of or responsibility for collecting those invoices when it did so. When Hana loaned NYAM money based on "recourse" invoices, NYAM was responsible for repaying the loan whether or not the invoices were collected. In contrast, when Hana accepted an invoice for factoring, Hana was required to rely on the invoice to obtain repayment of its loan.

17. My review of the files indicates that Hana did not lend NYAM money based on the "recourse" invoices supporting NYAM's proof of claim.

6. The Parties' Offsetting Debts

Plaintiff asserts a pre-petition claim against Defendant for $675,000 based on Letter and Licensing Agreements. (Pl. Mem. at 6.) Plaintiff also purports to assert a claim for damages based on "selling licensed goods past the License Period," but discovery has now closed, and there is no evidence in the record to establish either the alleged breach or any resulting damages. (*See* Def. Statement of Undisputed Material Facts ¶¶ 44-45.)

On August 11, 2017, Defendant filed Claim No. 1070. Claim No. 1070 asserting a general unsecured claim against BCBG in the amount of $1,754,149.50 based on unpaid invoices for BCBG's pre-petition purchases of merchandise.

7

# ARGUMENT

## DEFENDANT SHOULD BE GRANTED A SUMMARY JUDGMENT DISMISSING THIS PROCEEDING BECAUSE DEFENDANT IS ENTITLED TO SET OFF AMOUNTS THAT THE DEBTOR OWES IT AGAINST THE WHOLE OF THE CLAIM PLAINTIFF ASSERTS HERE

As this Court has held, summary judgment "'must be granted to the movant "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."'" *In re Sabine Oil & Gas Corp.*, 550 BR 59, 65 (Bankr SDNY 2016), *affd*, 567 BR 869 (SDNY 2017), *affd*, 734 Fed Appx 64 (2d Cir 2018) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)) (quoting Fed. R. Civ. P. 56(c)).

This Court should enter summary judgment in Defendant's favor because there is no genuine issue of material fact: Defendant is entitled to exercise a setoff against the whole of Plaintiff's claim. Plaintiff asserts a pre-petition claim against Defendant for $675,000, but Defendant has a much larger claim against Plaintiff – the Debtor failed to pay Defendant $1,754,149.50 for pre-petition purchases of merchandise. Further, there is no evidence to support Plaintiff's additional claim for "selling licensed goods past the License Period."

A. <u>Defendant Is Entitled to a Setoff under California law</u>

Defendant is entitled to exercise a setoff under California law, which governs here (Pl. Mem. at 10 n.10), because Defendant and BCBG owe each other mutual pre-petition debts. *See*, *e.g.*, *Harrison v. Adams*, 20 Cal.2d 646, 648 (1942):

> [I]t is well settled that a court of equity will compel a set-off when mutual demands are held under such circumstances that one of them should be applied against the other and only the balance recovered. The insolvency of the party against whom the relief is sought affords sufficient ground for invoking this equitable principle… and a judgment debtor who has, by assignment or otherwise, become the owner of a judgment or claim against his judgment creditor, may go into the court in which the judgment against him was rendered and have his judgment offset against the first judgment.

8

Plaintiff appears to argue that California law would bar Defendant's setoff because Defendant's claims were assigned. (*See* Pl. Mem. at 10.) Plaintiff's incorrect factual premise is discussed below, but Plaintiff's argument is also legally incorrect.

California law does ***not*** bar setoffs after an assignment; it merely, and properly, focuses on the "real party in interest." Accordingly, under California law, an agent or "assignee for collection" such as a trustee can set off claims owed by a beneficiary against claims owed to the beneficiary. The assignee is only barred from setting off claims it is collecting on a beneficiary's behalf against claims that the assignee owes himself, because those claims are not mutually owed in the same capacity. The California Supreme Court explained more than seventy-five years ago:

> In determining whether demands are mutual, equity will look to the real parties in interest. Thus ***there may be a set-off of judgments where the real and beneficial owner of one of them is the debtor upon the other, although an assignee for collection is the nominal owner of the first judgment***….An assignment for collection vests legal title in the assignee which is sufficient to enable him to maintain an action in his own name, but the assignor retains the equitable interest in the thing assigned.

*Harrison v. Adams*, 20 Cal.2d 646, 650 (1942) (emphasis added).

Here, there is no genuine argument that Hana became the beneficial owner of invoices it did not factor such as those at issue here. Accordingly, California law would allow Defendant to execute a setoff even if Defendant had assigned the claims to Hana.

B.  Defendant Is Entitled to a Setoff under the Bankruptcy Code

Defendant is also entitled to exercise a setoff under the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*. Section 553 of the Bankruptcy Code provides, "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case."

Plaintiff's argument to the contrary is only a single paragraph, and it is based entirely on

9

three materially misleading and inaccurate "facts." Plaintiff argues:

> Here, it is undisputed that each of the Mega-Link Invoices underlying Claim No. 1070 was assigned by NYAM to Hana. First, each of the Mega-Link Invoices clearly states on its face that it is "assigned to, owned by, and payable only to: HANA FINANCIAL, INC.," listing the wire instructions for BCBG to remit payment directly to Hana. Second, the Factoring Agreement plainly provides that Hana purchased (and NYAM assigned to Hana) all of NYAM's then-existing and future Accounts, which includes the Mega-Link Invoices. Levine Decl. Exhibit B, at §§ 1.1, 13. Finally, NYAM further documented the assignment of the Mega-Link Invoices to Hana in the NYAM Assignments. Levine Decl. Exhibit H. Accordingly, the Assigned Mega-Link Invoices, including the ones which form the basis for Claim No. 1070, are owned by Hana, not NYAM, destroying mutuality. NYAM therefore has no claim against the Debtors that can be offset against the Damages.

(Pl. Mem. at 10.)

Plaintiff's first argument is that the invoices at issue "are owned by Hana" because the invoices say so. However, Hana itself has stated otherwise – "Hana never took an ownership interest in those invoices." (*See* Thomas Decl. ¶8) The actual facts are simple, as both Defendant and Hana have explained: "All of the NYAM invoices issued in connection with the Program contained an instruction that payment should be remitted to Hana rather than to NYAM. This was done as a matter of convenience even when Hana had decided to reject the invoice for factoring." (*See id.* ¶ 7-8; Fleming Decl. ¶ 7-8.)

Plaintiff's second argument is that "the Factoring Agreement plainly provides that Hana purchased (and NYAM assigned to Hana) all of NYAM's then-existing and future Accounts." (Pl. Mem. at 10.) However, the Factoring Agreement actually only says that Defendant *agreed* to sell Hana its accounts, and Hana reserved the right to reject accounts under the terms of the Agreement and as further reflected in parties' business practice. (*See* Thomas Decl. ¶¶ 3-8; Fleming Decl. ¶¶ 3-17; Factoring Agreement ¶¶ 1.2, 1.3, 2.1, 13.) Both Defendants and Hana state in their Declarations that the invoices at issue here were not assigned to Hana.

In any event, the parties were free to do business on whatever terms they mutually agreed,

10

and their mutual agreement as to assignment is reflected in the Thomas and Fleming Declarations. The text of the Factoring Agreement, to the extent Plaintiff claims it is in any way inconsistent, is therefore irrelevant.

Finally, Plaintiff argues that "NYAM further documented the assignment of the Mega-Link Invoices to Hana in the NYAM Assignments." (Pl. Mem. at 10) Once again, Plaintiff's argument is misleading at best – the Assignment forms were "actually only a ***request for*** and ***offer of*** assignment. An actual assignment was only effectuated if Hana accepted the assignment and thereby agreed to lend NYAM money based on the invoice." (Fleming Decl. ¶ 10.) Mr. Fleming also states that "the 'Assignment' forms requested an assignment, but did not actually effectuate an assignment, because NYAM did not receive anything in return unless Hana actually accepted NYAM's assignment" and that, "[a]s a business matter, it would make no sense to transfer ownership of the right to collect a valuable invoice without receiving cash, a loan, or something else of equivalent value in exchange." (*Id.* ¶¶ 14-15.)

Thus, for all of the foregoing reasons, there was no assignment of the invoices at issue here. The invoices stated that they were assigned, and Mr. Fleming testified (in part) that they were assigned, but those statements reflected a businessman's understanding of assignment, not a legal one. The undisputed facts actually show that Defendant requested assignment of the invoices at issue on forms that, if accepted, would have effectuated an assignment, but Hana rejected all of the invoices at issue here. Moreover, no consideration changed hands to effectuate either a temporary assignment to Hana or a reassignment back to Defendant during the few days that Hana took to evaluate the invoices Defendant submitted on line. As a matter of law, therefore, no assignment took place.

Above all, this matter concerns factoring agreements between Defendants and Hana; no one else. Both Hana and Defendants have explained what was assigned and what was not in

11

accord with their agreements, as well as who owns which invoices. There is and can be no allegation that the allocation between them – which was entirely a consequence of factoring decisions made before the Debtor's bankruptcy – was for the purpose of claiming a setoff or was otherwise improper. Accordingly, that is the end of the matter – Plaintiff has no standing to rewrite the parties' agreements retroactively for its own self-serving purposes. Plaintiff's Motion should therefore be denied, and Defendant's Cross-Motion to effectuate a setoff and for dismissal of this proceeding should be granted.

**[Continued on following page]**

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully submits that the Court should deny Plaintiff's Motion, grant Defendant's Cross-Motion in all respects, and (iii) grant such other and further relief as is just and proper.

Dated: New York, New York
December 28, 2018

GRIFFIN HAMERSKY LLP

By: /s/ Michael D. Hamersky
Michael D. Hamersky
Scott A. Griffin
Richard K. Milin
420 Lexington Ave, Suite 400
New York, New York 10170
Telephone: (646) 998-5580
Facsimile: (646) 998-5574

*Counsel for Defendant, NYAM, LLC*