UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                          :

In re                                   :          Chapter 11

BCBG MAX AZRIA GLOBAL         :          Case No. 17-10466 (SCC)
HOLDINGS, LLC, et al.,[1]              :
                                          :          Jointly Administered

          Debtors.                :
---------------------------------------------------------------x
                                          :

DAVID MACGREEVEY, in his capacity as  :
PLAN ADMINISTRATOR,               :         Adv. Pro. No. 17-01101 (SCC)

          Plaintiff,              :

    vs.                             :

NYAM, LLC,                            :

         Defendant.             :
---------------------------------------------------------------x


# MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S <u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>

PACHULSKI STANG ZIEHL
& JONES LLP
Robert J. Feinstein, Esq.
Bradford J. Sandler, Esq.
Beth E. Levine, Esq.
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:   (212) 561-7777
Email: rfeinstein@pszjlaw.com
         bsandler@pszjlaw.com
         blevine@pszjlaw.com

*Counsel to the Plaintiff*

---

[1] A list of the Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number include: BCBG Max Azria Global Holdings, LLC (6857); BCBG Max Azria Group, LLC (5942); BCBG Max Azria Intermediate Holdings, LLC (3673); Max Rave, LLC (9200); and MLA Multibrand Holdings, LLC (3854).

DOCS_NY:38528.7 08467/001

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.   Plaintiff is Entitled to Summary Judgment as A Matter of Law Because Defendant Failed to Meet Its Burden of Identifying Specific Facts Indicating That There is a Genuine Triable Issue ................................................................................................... 2

    A.   Defendant Has Not Met its Burden of Establishing a Genuine Issue of Material Fact ................................................................................................... 3

        1.   Defendant Does Not Dispute It Is Indebted to Plaintiff ............................ 3

        2.   Because the Documentary Evidence is Unambiguous on its Face, There is No Issue of Material Fact As to the Second Affirmative Defense ..................................................................................................... 4

            a.   "Eligible Account" v. Non-"Eligible Account" ............................. 5

            b.   "Approved Account" v. "Non-Approved Account" ...................... 6

            c.   Section 1.2 of the Factoring Agreement ........................................ 6

            d.   The Language of the Factoring Agreement Is Not Irrelevant ........ 7

        3.   Defendant's Declarations Should Not Be Considered ............................... 7

    B.   Under California Law Set-Off Is Not Available Under These Facts ................... 11

II.   In the Alternative, The Defendant's Motion for Summary Judgment Should Be Denied Due to The Existence of a Genuine Issue of Material Fact ................................ 13

CONCLUSION ........................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................ 2, 13

*Bank of Ill. v. Allied Signal Safety Restraint Sys.*,
  75 F.3d 1162 (7th Cir. 1996) ......................................................................................... 10

*Campbell v. Eckerd Corp.*,
  190 Fed. App'x. 399 (6th Cir. 2006) .............................................................................. 2

*Colby v. Klune*,
  178 F.2d 872 (2d Cir. 1949) ......................................................................................... 14

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merill Lynch, Pierce, Fenner & Smith Inc.*,
  232 F.3d 153 (2d Cir. 2000) ........................................................................................... 4

*Daubert v. NRA Group, LLC*,
  861 F.3d 382 (3d Cir. 2017) ........................................................................................... 8

*Fed. Ins. Co. v. Ayers*,
  772 F. Supp. 1503 (E.D. Pa. 1991) ................................................................................. 3

*Harrison v. Adams*,
  20 Cal.2d 646 (1942) ............................................................................................. 11, 12

*Hayes v. N.Y. City Dep't of Corr.*,
  84 F.3d 614 (2d Cir. 1996) ............................................................................................. 8

*Jeffreys v. Rossi*,
  275 F.Supp.2d 463 (S.D.N.Y. 2003) ............................................................................ 14

*Kennedy v. Allied Mut. Ins. Co.*,
  952 F. 2d 262 (9th Cir. 1991) ....................................................................................... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ...................................................................................................... 14

*Mellon Bank, N.A. v. United Bank Corp.*,
  31 F.3d 113 (2d Cir. 1994) ............................................................................................. 4

*Moll v. Telesector Res. Grp., Inc.*,
  760 F.3d 198 (2d Cir. 2014) ........................................................................................... 8

*Nat. Reserve Co. v. Met. Tr. Co.*,
  17 Cal.2d 827 (1941) .................................................................................................... 12

*Perma Research & Dev. Co. v. Singer Co.*,
  410 F.2d 572 (2d Cir. 1969) ........................................................................................... 8

DOCS_NY:38528.7 08467/001

*Resolution Tr. Corp. v. Murray*,
   935 F.2d 89 (5th Cir. 1991) .................................................................................................. 3

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir. 1998) .................................................................................................. 2

*Unimax Corp. v. Lumbermens Mut. Cas. Co.*,
   908 F.Supp. 148 (S.D.N.Y. 1995) ......................................................................................... 3

*Williams v. Nish*,
   2015 U.S. Dist. LEXIS 1159 (M.D. Pa. Jan. 7, 2015) ........................................................... 8

### OTHER AUTHORITIES

1 Witkin, *Sum. Cal. Law Contracts* § 728 ..................................................................................... 12

### RULES

Fed. R. Civ. P. 56(a) ..................................................................................................................... 13

Fed. R. Civ. P. 56(c) ....................................................................................................................... 2

Fed. R. Civ. P. 56(e) ....................................................................................................................... 2

DOCS_NY:38528.7 08467/001

Plaintiff (the "Plaintiff") David MacGreevey, solely in his capacity as plan administrator in the above-captioned chapter 11 cases (the "Bankruptcy Cases"), submits this memorandum of law in further support of his *Motion for Partial Summary Judgment* ("Plaintiff's Motion") and in opposition to the Cross-Motion for Summary Judgment (the "Cross-Motion") of defendant NYAM, LLC ("Defendant" or "NYAM") filed in the above-captioned adversary proceeding (the "Adversary Proceeding").[2]

## PRELIMINARY STATEMENT

Plaintiff seeks summary judgment on two issues: (1) whether Defendant owes money to Plaintiff on account of its breaches of the Letter Agreement and the License Agreement; and (2) whether Defendant is entitled to the Second Affirmative Defense of setoff. The success of Defendant's Cross-Motion similarly depends on the availability of the Second Affirmative Defense, *i.e.*, whether Defendant is entitled to setoff the amounts to which it asserts it is entitled under the NYAM Claim against the amounts it admits it owes to Plaintiff for breaches of their agreements. With respect to the first question, there is no dispute that Defendant breached the agreements; it owes Plaintiff $675,000.00, plus interest.

As to the second issue, the evidentiary record, comprised of the Factoring Agreement, the NYAM Assignments, and no less than four prior sworn statements from Defendant's Chief Financial Officer, Brian Fleming ("Fleming") is clear; because Defendant explicitly assigned all of the invoices underlying the NYAM Claim (the "Claim Invoices") to its factor, Hana, Defendant has no equitable or legal rights in the Claim Invoices that it can setoff against the debt it agrees it owes to Plaintiff.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment* [Adv. Dkt. No. 25] ("Plaintiff's Brief").

In a desperate attempt to preserve the defense, and notwithstanding the record, Defendant asserts that it, not Hana, owns the Claim Invoices because despite their plain language, the NYAM Assignments were not actually assignments. The only support that Defendant provides for this dubious proposition is a strained and illogical reading of the operative documents and two non-credible declarations made after Plaintiff's Motion was filed that are lacking in documentary support, are directly contradicted by Fleming's prior testimony, and should not be considered by this Court under the sham affidavit doctrine. This is insufficient; Plaintiff's Motion should be granted, and the Cross-Motion should be denied.

Finally, in the event that the Court determines that there are genuine disputed issues of material fact that preclude entry of summary judgment in favor of Plaintiff, it should also deny the Cross-Motion, as the identical factual issues, *i.e.*, the correct interpretation of the NYAM Assignments and the Factoring Agreement, would exist with respect to that motion.

**ARGUMENT**

I.  **Plaintiff is Entitled to Summary Judgment as A Matter of Law Because Defendant Failed to Meet Its Burden of Identifying Specific Facts Indicating That There is a Genuine Triable Issue**

Where, as here, a motion for summary judgment is properly made, the burden shifts to the nonmoving party, to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The nonmovant "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), but must support the existence of an alleged dispute with specific citation to the record materials. Fed. R. Civ. P. 56(c). "The nonmoving party has an affirmative duty to highlight the specific portions of the record upon which it relies to allege a genuine issue of material fact." *Campbell v. Eckerd Corp.*, 190 Fed. App'x. 399, 404 (6th Cir. 2006). "Rule 56(e) places an affirmative duty on the non-moving party to set forth, by affidavit or otherwise,

specific facts showing that there is a genuine issue. In doing so, however, defendants cannot create an issue of fact simply by raising arguments contradicting their own prior statements and representations." *Fed. Ins. Co. v. Ayers*, 772 F. Supp. 1503, 1506 (E.D. Pa. 1991). The non-moving party "must present significant probative evidence demonstrating the existence of a triable issue of fact." *Unimax Corp. v. Lumbermens Mut. Cas. Co.*, 908 F.Supp. 148, 153 (S.D.N.Y. 1995) (citing *Resolution Tr. Corp. v. Murray*, 935 F.2d 89, 92 (5th Cir. 1991)). Defendant has failed to meet its burden, and Plaintiff's Motion should be granted.

    **A.    Defendant Has Not Met its Burden of Establishing a Genuine Issue of Material Fact**

There is no issue of material fact as to the amounts owed by Defendant to Plaintiff. There is also no genuine issue of material fact as to whether NYAM assigned the Claim Invoices to Hana, thereby defeating the ability to set off those amounts. The face of the Factoring Agreement and the face of the NYAM Assignments both provide unambiguously that Defendant assigned the Assigned Mega-Link Invoices, including the Claim Invoices, to Hana. Accordingly, Plaintiff's Motion should be granted.

    **1.    Defendant Does Not Dispute It Is Indebted to Plaintiff**

Plaintiff is entitled to summary judgment awarding it $675,000.00, plus interest. As discussed in Plaintiff's opening brief, Defendant owes Plaintiff $575,000.00 on account of the unpaid Royalties. *Plaintiff's Brief*, at 8. Defendant does not dispute this. *See, e.g., Answer*, at ¶¶ 9, 10, 12; *Declaration of Beth Levine in Support of Plaintiff's Motion for Partial Summary Judgment* [Adv. Dkt. No. 27] (the "First Levine Decl."), Exhibit E, at 28:7 – 29:9, 35:17 – 36:15. *See also Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment and in Support of Its Cross-Motion for Summary Judgment* [Adv. Dkt. No. 30] ("Defendant's Brief") at p. 1 ("It is 'undisputed' that Defendant owes BCBG $675,000 under

the prepetition licensing and related agreements . . ."). Fleming also conceded in his deposition in the Adversary Proceeding that NYAM owes interest on the principal amount of the unpaid Royalties at the interest rate of prime + 5%, *See First Levine Decl.*, Exhibit E, at 37:2 – 5, and owes the $100,000 Letter Agreement Credit to Plaintiff. *See First Levine Decl.*, Exhibit E, at 22:15 – 24.

### 2. Because the Documentary Evidence is Unambiguous on its Face, There is No Issue of Material Fact As to the Second Affirmative Defense

There is also no genuine issue of material fact as to whether NYAM assigned the Claim Invoices to Hana. Where, as here, the language of a contract is unambiguous, summary judgment is appropriate. *See, e.g., Compagnie Financiere de CIC et de L'Union Europeenne v. Merill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157-58 (2d Cir. 2000); *Mellon Bank, N.A. v. United Bank Corp.*, 31 F.3d 113, 115 (2d Cir. 1994). The Factoring Agreement and the NYAM Assignments (as well as Defendant's prior statements) make clear that the Claim Invoices were assigned to Hana, thereby destroying the mutuality required to allow Defendant to properly assert setoff as a defense. *Plaintiff's Brief* at p. 4-5, 10-11.

Defendant tries, unsuccessfully, to evade the unambiguous language of the Factoring Agreement by disingenuously confusing distinct concepts to argue that Hana did not purchase all of Defendant's Accounts.[3] Much of this argument rests on Hana's alleged right to "reject" an invoice. *See Defendant's Brief* at p. 2-3. This is a red herring as the terms "reject" and "rejection" appear nowhere in the Factoring Agreement,[4] but in any event, Defendant apparently

---

[3] Under the Factoring Agreement, "Accounts" are defined as "[a]ll presently existing or outstanding and all hereafter created or acquired accounts (as that term is defined in the UCC), contract rights, documents, notes, drafts and other forms of obligations owed to or owned by Client arising or resulting from the sale of goods or the rendering of services by Client, all general intangibles relating thereto, all proceeds thereof, all guaranties and security therefore. . ." *First Levine Decl.*, Exhibit B, at § 13.

[4] To be sure, Hana had the ability to "charge back" certain Accounts to Defendant, such as "any Non-Approved Account which is not paid in full when due and are 60 or more days past due." *Id.*, at § 6.4(e). But even then, "[a]

conflates the fact that Hana had certain discretion under the Factoring Agreement as to whether or not to lend on a purchased Account with the issue of whether an Account itself was, in fact, purchased by Hana. As discussed below, a plain reading of the Factoring Agreement makes clear that this argument is unavailing.

### a.     "Eligible Account" v. Non-"Eligible Account"

Defendant argues that because the Factoring Agreement provided that Hana was able to determine whether an Account was an Eligible Account, this meant that "Hana had the right to reject invoices." *Defendant's Brief*, at p. 3. To the contrary, a plain reading of section 2.1(b) of the Factoring Agreement supports Plaintiff's argument that Hana purchased all of Defendant's Accounts, including the Claim Invoices.

As Defendant concedes, under section 1.1 of the Factoring Agreement, Defendant "agrees to sell, assign and transfer to Hana, and Hana hereby agrees to purchase, **all of Client's accounts**, with full power to Hana to collect and otherwise deal with such Accounts as the sole and exclusive owner thereof." *First Levine Decl.*, Exhibit B, at § 1.1., at § 1.1 (emphasis added). Upon purchase of an Account, Hana, in its discretion, could determine whether or not an Account was an "Eligible Account," meaning that such Account was eligible for an advance on the purchase price. *Id.*, at § 2.1(b). However, whether or not an Account was an Eligible Account under the Factoring Agreement is irrelevant to the question of whether Hana purchased such Account. Indeed, the very definition of Eligible Account— "**an Account purchased by Hana** [that] is eligible for an Advance"— underscores the fact that Hana purchased, and was assigned, all of Defendant's Accounts. *Id.* (emphasis added). In other words, Hana had to have purchased an Account before it could embark on the determination of whether or not it was an

---

charge back does not constitute a reassignment of an Account." *Id.*, at § 6.4. This unambiguous sentence clearly means both that all Accounts were assigned to Hana in the first place and that, even if Hana were to charge an Account back to Defendant, doing so would not constitute a reassignment of the Account to Defendant.

"Eligible Account." Thus, Defendant's argument that the fact that Hana had discretion as to whether or not to classify an Account as an Eligible Account meant that Hana did not purchase all of Defendant's Accounts is contrary to the explicit terms of the Factoring Agreement.

### b.    "Approved Account" v. "Non-Approved Account"

Defendant further argues that the distinction between "Approved Accounts" and "Non-Approved Accounts" shows that Hana was not required to purchase all of Defendant's Accounts. *Defendant's Brief*, at p. 3. This, too, is incorrect. If an Account was deemed to be an Eligible Account, it could be classified in one of two ways—an "Approved Account" or a "Non-Approved Account." *First Levine Decl.*, Exhibit B, at §§ 2.1(a), 13. Whether classified by Hana as an Approved Account or a Non-Approved Account, such Account was still an Eligible Account which, as set forth above, meant it was purchased by Hana.

### c.    Section 1.2 of the Factoring Agreement

Defendant also argues that section 1.2 of the Factoring Agreement states that "[i]nvoices were not automatically assigned to Hana" and "Defendant was required to assign individual invoices within thirty (30) days of shipping and could only do so if the Account was not past due." *Defendant's Brief*, at p. 3. This is incorrect; section 1.2 of the Factoring Agreement has nothing to do with the assignment of invoices from Defendant to Hana. Section 1.2 of the Factoring Agreement concerns Hana's establishment of "credit lines for sales to [NYAM]'s customers" and the determination of whether an Account is an Approved Account. *First Levine Decl.*, Exhibit B, at § 1.2(a). Such section does not state, for example, that Hana's decision not to establish a credit line or consider a purchased Account an "Approved Account" constitutes a "rejection" of an assignment of an invoice or a decision not to purchase an Account; it merely has to do with the approval of an already-purchased Account for credit. Moreover, the conditions cited by Defendant—that the Account in question is not past due and must be

assigned within 30 days of shipping—are conditions precedent to such Account being automatically considered an "Approved Account." *Id.* As discussed above, even if an Account is not an "Approved Account," that does not mean that such Account was not assigned to and thus owned by Hana. A "Non-Approved Account" could still be advanced upon by Hana, albeit at a lower rate, and was still an "Eligible Account." *Id.*, at § 2.1(a)(ii).

### d. The Language of the Factoring Agreement Is Not Irrelevant

Defendant also argues that "the parties were free to do business on whatever terms they mutually agreed" and that the "text of the Factoring Agreement, to the extent Plaintiff claims it is in any way inconsistent, is therefore irrelevant." *Defendant's Brief*, at pp. 10-11. Such a claim is simply not credible in light of, among other things, Fleming's prior testimony (discussed below) and the terms of the Factoring Agreement itself, which includes an integration clause and provides explicitly that the agreement "**may not be changed or terminated orally**". *See First Levine Decl.*, Exhibit B, at § 11 (emphasis added).

### 3. Defendant's Declarations Should Not Be Considered

Recognizing that its strained interpretation of plain language of the Factoring Agreement does not save it from summary judgment against it, Defendant next attempts to evade both the plain language of that agreement and the NYAM Assignments as well as its prior pleadings and testimony by manufacturing eleventh hour declarations submitted by Fleming [Adv. Docket No. 30-2, Exhibit B] (the "Fleming Declaration") and by Kevin Thomas, a representative of Hana, [Adv. Docket No. 30-2, Exhibit A] (the "Thomas Declaration" and collectively with the Fleming Declaration, the "Declarations"), that purport to contradict those documents. However, these Declarations are contradicted by Fleming's prior sworn declarations and testimony in the Bankruptcy Cases and in this Adversary Proceeding and should therefore should be excluded pursuant to the sham affidavit doctrine.

Under the sham affidavit doctrine, well-settled under Second Circuit law, in opposing a summary judgment motion,

> a party may not create an issue of fact by submitting an affidavit . . . that, by omission or addition, contradicts the affiant's previous deposition testimony. "If a party who has been examined at length on deposition could praise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial.

*Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996), quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) (internal citations omitted); *see also Daubert v. NRA Group, LLC*, 861 F.3d 382, 392 (3d Cir. 2017) ("The court may, on the other hand, disregard an affidavit when the affiant was carefully questioned on the issue, had access to the relevant information at that time, and provided no satisfactory explanation for the later contradiction. It may similarly disregard an affidavit entirely unsupported by the record and directly contrary to [other relevant] testimony, or if it's clear the affidavit was offered solely to defeat summary judgment.") (internal quotations omitted); *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014). "[A] deposition of a witness, subject to cross-examination, is generally more reliable that an affidavit submitted to oppose a summary judgment motion." *Hayes*, 84 F.3d at 619.[5]

Fleming gave sworn testimony in the Bankruptcy Cases on four occasions prior to the filing of Plaintiff's Motion, twice in declarations and twice in depositions. Each instance of Fleming's prior testimony contains statements that contradict those made in the Fleming

---

[5] Courts have also applied the sham affidavit doctrine where prior statements were made in writing, under penalty of perjury, rather than during a sworn deposition. *See, e.g., Williams v. Nish*, 2015 U.S. Dist. LEXIS 1159, at *21 (M.D. Pa. Jan. 7, 2015).

Declaration.[6] For example, in prior litigation before this Court regarding the NYAM Claim, Fleming twice proffered declarations sworn under penalty of perjury, where he stated that "Hana factored **all** of the respective invoices." *See First Prior Fleming Declaration*, at ¶ 17;[7] *Second Prior Fleming Declaration*, at ¶ 11.[8] (emphasis added). In contrast, in the Fleming Declaration, Fleming stated that "[t]he invoices identified in the NYAM proof of claim are all invoices that Hana rejected for factoring." *Fleming Declaration*, at ¶ 8.

In an attempt to backpedal from his prior explicit admissions, Fleming similarly claims that, although he previously testified—on multiple occasions— that the Claim Invoices were assigned from NYAM to Hana, his lay understanding of the term "assignment" merely meant "a ***request for*** and ***offer of*** assignment." *Fleming Declaration*, at ¶ 10 (emphasis added); *cf. Second Levine Decl.*, Exhibit D, at 23:25 – 24:4; 25:19 -22; 26:8-11; 27:7-15; *First Levine Decl.*, Exhibit E, at 42:24 – 43:4; 43:17-24; 46:24 – 47:10. This proposition is simply not credible. Fleming testified that he is "very familiar" with the retail industry, having been a participant in it for over forty years, and that he is also familiar with factoring generally. *See Second Levine Decl.*, Exhibit D, at 10:10 – 11:6. In light of his vast experience, it is improbable that he did not know that there is a difference between "requesting" or "offering" to do something and actually doing it.

Similarly, in an obvious attempt to contradict his prior admissions, Fleming repeatedly asserts in the Fleming Declaration that Hana never had an ownership interest in the invoices underlying the NYAM Claim. *See Fleming Declaration*, at ¶ 6 (". . . Hana did not accept any

---

[6] Attached to the Second Levine Declaration as Exhibit A is a chart showing the most significant of these contradictions.
[7] The *Corrected Declaration of Brian Fleming in Support of Response to Debtors' Objection to Proof of Claim Number 751 Filed by NYAM LLC* [Docket No. 578-1] (the "First Prior Fleming Declaration") is attached to the Second Levine Declaration as Exhibit B.
[8] The *Corrected Declaration of Brian Fleming in Support of Response to Debtors' Objection to Proof of Claim Number 753 Filed by Hana Financial, Inc.* [Docket No. 579-1] (the "Second Prior Fleming Declaration") is attached to the Second Levine Declaration as Exhibit C.

ownership interest in the invoice."); ¶ 8 ("Accordingly, Hana never took an ownership interest in these invoices . . ."); ¶ 12 ("NYAM . . . only actually assigned ownership of and the right to collect the invoices attached to the 'Assignment' form, once Hana accepted the assignment."); ¶ 15 (". . . ownership of invoices did not transfer back and forth between NYAM and Hana . . .").

However, during Fleming's deposition in connection with this Adversary Proceeding, the following exchange occurred:

> Q.    But would it be correct to state that at the beginning when you go and when you – excuse me – when NYAM would issue invoices, let's say to BCBG—
>
> A.    Correct.
>
> Q.    --they would assign all of those invoices to Hana?
>
> A.    Yes.
>
> Q.    **Hana became the owner of them?**
>
> A.    **Correct**.

*First Levine Decl.*, Exhibit E., at 45:8 – 17 (emphasis added).  It is clear that the Fleming Declaration was manufactured to refute Plaintiff's Motion and the evidence upon which it relies.

The purpose of the sham affidavit doctrine is preserve "the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy v. Allied Mut. Ins. Co.*, 952 F. 2d 262, 266 (9th Cir. 1991); *See also Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996) ("If such contradictions were permitted . . . the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut.") (internal quotation omitted).  In other words, it exists precisely to permit a court to disregard non-credible, manufactured "evidence"—such as the Fleming Declaration and Thomas Declaration—as a means of creating a faux disputed issue of fact to defeat a summary judgment motion.

As demonstrated in Exhibit A to the Second Levine Declaration, Fleming has concocted a brand new story that entirely contradicts his two prior declarations, both of which were submitted to this Court under penalty of perjury, and two prior sworn depositions. His attempts to explain away the inconsistencies are completely incredible; any person in the retail industry (or, indeed, any business) with as much experience as Fleming would know the difference between owning something and not owning something, factoring something and not factoring something, and assigning something and merely offering to assign something. Because the Fleming Declaration explicitly contradicts Mr. Fleming's prior sworn testimony, it should be excluded pursuant to the sham affidavit doctrine. Moreover, because the Thomas Declaration is almost entirely identical to the Fleming Declaration and arguably the product of collusion with Defendant, it shares the same indicia of unreliability and should be excluded under the same principle.[9]

### B.    Under California Law Set-Off Is Not Available Under These Facts

Mutuality is destroyed where, as here, one party's claim against the other has been assigned to a third party. *See Plaintiff's Brief,* at p. 9 – 11. Relying upon *Harrison v. Adams*, 20 Cal.2d 646, 650 (1942), Defendant argues that even if it did assign to Claim Invoices to Hana, it is still entitled to set-off under California law because, according to Defendant, California law does not bar setoff after assignment. *Defendant's Brief* at p. 9. *Harrison*, however, is inapposite. In contrast to the instant matter, *Harrison* involved an "assignment for collection," which "vests legal title in the assignee which is sufficient to enable him to maintain an action in his own name,

---

[9] At best for Defendant, there is a material issue of fact to which Plaintiff is entitled to discovery concerning the Thomas Declaration; namely, the nature of the relationship between Defendant and Hana and whether Defendant and Hana have acted collusively. For instance, at the time the NYAM Claim was filed, NYAM and Hana were represented by the same counsel and in response to the Debtors' objection to Hana's proof of claim, the only declaration Hana offered was from Fleming, allegedly an employee of NYAM. *See, e.g., First Levine Decl.*, at Exhibit G; *Second Levine Decl.*, at Exhibit C. It is certainly reasonable for Plaintiff to cross examine on these issues at trial.

but the assignor retains the equitable interest in the thing assigned. Such an assignee has been referred to as the trustee or agent of the assignor, and a fiduciary relationship exists between them." *Harrison*, 20 Cal.2d at 650. There, Harrison, the assignee (of a claim against Adams) for collection, attempted to use such claim to offset a debt he owed to Adams, but the California Supreme Court found that he could not do so because he was merely an assignee for collection without a beneficial interest in the property assigned. *Id.*, at 651. This is not the situation at bar.

The NYAM Assignments are absolute assignments, which stand in contrast to "assignments for collection." *See* 1 Witkin, *Sum. Cal. Law Contracts* § 728 (separately classifying total assignments and assignments for collection under California law). Nothing in the Factoring Agreement or the NYAM Assignments lead to a different conclusion; no trust or fiduciary relationship was created between Defendant and Hana, nor did Defendant reserve any interest in the invoices for itself. Indeed, the face of the NYAM Assignments plainly provide that the Claim Invoices were assigned to Hana without any reservation: "[f]or value received, [NYAM] hereby sells, assigns, transfers and sets over to HANA FINANCIAL . . . the accounts receivable described in the attached copies of invoices . . ." *First Levine Decl.*, at Exhibit H. "In determining what rights or interests pass under an assignment, the intention of the parties as manifested in the instrument is controlling. An unqualified assignment of a contract or chose in action, however, with no indication of the intent of the parties vests in the assignee the assigned contract or chose and all rights and remedies incidental thereto." *Nat. Reserve Co. v. Met. Tr. Co.*, 17 Cal.2d 827, 832-33 (1941) (internal citations omitted).

Because the NYAM Assignments and Factoring Agreement plainly provide for "unqualified assignment" of the Claim Invoices, the Claim Invoices were assigned by NYAM to Hana by absolute assignment as a matter of law, and they are now owned by Hana, not

Defendant. Defendant has not produced—nor has it pointed the Court to—any evidence to the contrary. There is therefore no mutuality between the Damages and the Claim Invoices, and Plaintiff is entitled to partial summary judgment in its favor on Defendant's Second Affirmative Defense.

## II. In the Alternative, The Defendant's Motion for Summary Judgment Should Be Denied Due to The Existence of a Genuine Issue of Material Fact

As above, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the unlikely event that the Court were to find that Defendant has met its initial burden of demonstrating the absence of a disputed issue of material fact with respect to the Cross-Motion, the burden would then shift to the Plaintiff as the opposing party, to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Plaintiff has met this burden.

First, in the event that the Court determines that Plaintiff is not entitled to summary judgment on the Second Affirmative Defense, it should also deny the Cross-Motion and permit the Adversary Proceeding to continue to trial because there exist significant issues of material fact arising out of Defendant's lack of credibility because Defendant relies almost exclusively on the Declarations to support the Cross-Motion. As discussed in detail above, both Declarations (which, in sum and substance constitute Defendant's "evidence" supporting its position) are entirely lacking in credibility in light of Fleming's four prior sworn statements that wholly contradict his most recent Declaration and Defendant's failure to reference any documentary evidence supporting the Declaration. As shown on Exhibit A to the Second Levine Declaration, the Declarations are contradicted by the evidentiary record, and Plaintiff is entitled to cross examine Fleming at trial so that this Court, as finder of fact, can assess his credibility. Where, as

here, the ascertainment of material facts turns on the credibility of a witness, summary judgment is improper. *See, e.g., Colby v. Klune*, 178 F.2d 872, 873 (2d Cir. 1949); *Jeffreys v. Rossi*, 275 F.Supp.2d 463, 466-67 (S.D.N.Y. 2003). To the extent the Court does not outright disregard the Declarations under the sham affidavit doctrine, there is indisputably an issue of fact precluding summary judgment in favor of Defendant.

Finally, as set forth in detail above and in Plaintiff's Brief and accompanying documents, Plaintiff has pointed to substantial specific pieces of evidence, including the plain terms of the Factoring Agreement, the NYAM Assignments, Fleming's prior declarations, and Fleming's deposition testimony, that contradict the newly-concocted arguments made in the Cross-Motion and accompanying Declarations. Accordingly, Plaintiff has met its burden of identifying specific portions of the evidentiary record that, at bare minimum, show that the Cross-Motion cannot be granted due to the existence of a material issue of disputed fact. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (stating that non-moving party must point to "specific facts" evidencing a "genuine issue for trial").

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully submits that Plaintiff's Motion should be granted and Defendant's Cross-Motion should be denied.

Dated:  January 18, 2019 PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Beth E. Levine*
Robert J. Feinstein, Esq.
Bradford J. Sandler, Esq.
Beth E. Levine, Esq.
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email: rfeinstein@pszjlaw.com
       bsandler@pszjlaw.com
       blevine@pszjlaw.com

*Counsel to the Plaintiff*